**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 15-4639

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

DONALD T. HILL,

              Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Robert E. Payne, Senior District Judge. (3:15−cr−00013−REP−1)

Argued: January 25, 2017                Decided: March 30, 2017

Before DUNCAN and KEENAN, Circuit Judges, and DAVIS, Senior Circuit Judge.

Affirmed by published opinion. Judge Keenan wrote the majority opinion, in which Judge Duncan joined. Senior Judge Davis wrote a dissenting opinion.

**ARGUED:** Caroline Swift Platt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Stephen Eugene Anthony, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Robert J. Wagner, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

Donald Hill pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He appeals from the district court's denial of his motion to suppress evidence of statements he made during a traffic stop and of a firearm that was seized during the stop. Hill argues that the police officers' actions exceeded the lawful scope of the stop, and that the stop was prolonged unjustifiably beyond the time needed to execute the relevant tasks, violating his Fourth Amendment rights described in *Rodriguez v. United States*, 135 S. Ct. 1609 (2015).

Upon our review, we conclude that the district court did not err in denying the suppression motion, because the traffic stop did not exceed the time reasonably required to complete the tasks incident to the mission of the stop. Accordingly, we affirm the district court's judgment.

I.

On October 20, 2014, Richmond City police officers Ryan Taylor and Jason McClendon were patrolling a neighborhood in Richmond in their police cruiser.[1] The officers saw a vehicle (the car) travelling at an estimated speed slightly exceeding the posted speed limit, and observed the car cross a yellow, double-solid line marker in the

---

[1] Because we must view the evidence in the light most favorable to the government, we recount the facts in accordance with the officers' testimony at the suppression hearing. *See United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015). Hill does not challenge the district court's determination that both officers testified credibly.

center of the roadway. After Officer Taylor activated the cruiser's emergency lights and siren, the car turned into a driveway of a residence. The officers parked their cruiser at the end of the driveway behind the car, and initiated a traffic stop about 6:01 p.m.

The driver of the car, Jeremy Taylor (the driver), immediately stepped out of the car. The officers thought that the driver might be attempting to abscond from the scene,[2] but the driver complied when ordered by Officer McClendon to return to the car.

As the officers approached the car, Officer Taylor recognized both occupants of the vehicle. Officer Taylor testified that he knew the driver as someone who had been "hanging with" individuals "connected with" robberies. Officer Taylor also recognized Hill, the passenger in the vehicle, from a prior traffic stop, and was aware that Hill had been a victim in a prior stabbing incident.

At Officer Taylor's request, the driver produced identification but Hill was unable to do so. Officer Taylor returned to the police cruiser, and entered the names of both the driver and Hill into computer databases operated by the Department of Motor Vehicles (DMV) and the National Crime Information Center (NCIC). Officer Taylor took this action to confirm the men's identities, to ascertain whether there were any warrants outstanding for their arrest, and to determine whether the driver had a valid operator's license.

After about three minutes had passed, the NCIC database returned an "alert" notifying Officer Taylor that both men had been associated with drug trafficking and

---

[2] The driver testified at the suppression hearing that he was not attempting to run from the car, but the district court discredited the driver's testimony.

were "likely armed." Officer Taylor also learned that the driver had a suspended operator's license. Accordingly, about 6:04 p.m., Officer Taylor began writing two summonses for the driver, one for reckless driving and one for driving with a suspended operator's license. Officer Taylor also requested that a K-9 unit be sent to the scene.

Officer Taylor interrupted writing the summonses in order to enter the men's names into an additional computer database known as PISTOL, which tracks every person who has had prior contacts with the police in Richmond.[3] Officer Taylor testified that using PISTOL can be a lengthy process because after an officer enters an individual's name into the system, PISTOL produces a list of all individuals with the same name. In this case, after PISTOL produced a list of eight or nine individuals with the same name as the driver, Officer Taylor spent between three and five minutes reviewing that information. Once Officer Taylor had located both the driver and Hill in the PISTOL system, Officer Taylor resumed writing the two summonses. Both officers testified that it typically takes about four or five minutes to write a single summons.

While Officer Taylor searched the databases and continued to write the summonses in the police cruiser, Officer McClendon remained standing next to the passenger side of the car "[m]aking small talk" with the driver and Hill. During their conversation, Officer McClendon asked the men a total of three times whether there were

---

[3] PISTOL stands for "Police Information System Totally On Line," *Commonwealth v. Smith*, 709 S.E.2d 139, 140 (Va. 2011), and "is a database that advises officers of the 'nature of the contact' a suspect has had with the Richmond Police Department, any prior arrests, and whether the suspect might be armed," *Marshall v. Commonwealth*, No. 2053-15-2, 2016 WL 7094219, at *1 n.1 (Va. Ct. App. Dec. 6, 2016) (unpublished).

4

any drugs or firearms in the car. Following the third inquiry, Hill responded that he had a firearm on his person. Officer McClendon immediately shouted "gun," prompting Officer Taylor to return to the car to assist in securing Hill and recovering the firearm.

Meanwhile, the K-9 unit had arrived at the scene. However, at the time Officer McClendon yelled "gun," the K-9 unit dog was still in the unit's vehicle and had not begun its anticipated "sniff" of the area around the car. The district court found that a total of about 20 minutes had elapsed from the time the officers initiated the stop to the moment that Officer McClendon shouted "gun."

Hill was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He filed a motion to suppress both the firearm and the statements he made during the traffic stop. After a suppression hearing, the district court found that the officers had testified credibly, and accepted as true the officers' description of the events. The court also found that the stop was not extended for any reason, including Officer Taylor's request for a K-9 unit. The court accordingly concluded that the officers had acted lawfully, and denied Hill's motion to suppress.

Hill later entered a conditional guilty plea, reserving his right to challenge on appeal the denial of his suppression motion. Hill now appeals from the district court's denial of that motion.

## II.

Hill argues that Officers Taylor and McClendon unlawfully extended the duration and scope of the traffic stop, in violation of Hill's rights under the Fourth Amendment.

5

In particular, Hill challenges Officer McClendon's decision to talk with him and the driver, rather than to assist Officer Taylor with searching the databases and writing the summonses. Hill also challenges Officer Taylor's decisions to request a K-9 unit and to search the PISTOL database. Hill asserts that as a cumulative effect of these decisions, the officers improperly extended the stop beyond the time necessary to complete the purpose of the stop in violation of the Supreme Court's decision in *Rodriguez*, 135 S. Ct. 1609. We disagree with Hill's arguments.

A.

When a district court has denied a motion to suppress, we review the court's legal conclusions de novo and its factual findings for clear error. *United States v. White*, 836 F.3d 437, 440 (4th Cir. 2016). We view the evidence in the light most favorable to the government, the prevailing party in the district court. *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015).

A traffic stop constitutes a "seizure" under the Fourth Amendment and is subject to review for reasonableness. *Id.* To satisfy the reasonableness requirements for an investigative detention, a traffic stop must be legitimate at its inception, and the officers' actions during the stop must be "reasonably related in scope" to the basis for the stop. *Id.* (citation omitted); *see generally Terry v. Ohio*, 392 U.S. 1 (1968). Because Hill does not argue that the traffic stop was unjustified at its inception, our analysis is limited to the second question, namely, whether the "manner of execution [of the stop] unreasonably infringe[d]" on Hill's rights under the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

6

If a traffic stop is extended in time beyond the period that the officers are completing tasks related to the traffic infractions, the officers must either obtain consent from the individuals detained or identify reasonable suspicion of criminal activity to support the extension of the stop. *Williams*, 808 F.3d at 245-46. The "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez*, 135 S. Ct. at 1614. The Supreme Court recently has clarified that extending a stop by even a de minimis length of time violates the Fourth Amendment. *Id.* at 1615-16; *see also Williams*, 808 F.3d at 246-47.

The "acceptable length of a routine traffic stop," however, "cannot be stated with mathematical precision." *United States v. Digiovanni*, 650 F.3d 498, 511 (4th Cir. 2011) (citation omitted), *abrogated in part on other grounds by Rodriguez*, 135 S. Ct. 1609. In evaluating the reasonableness of a stop, we consider "what the police in fact do," and whether the officers acted reasonably under the totality of the circumstances presented to them. *Rodriguez*, 135 S. Ct. at 1616; *Digiovanni*, 650 F.3d at 509. Thus, an officer need not employ "the least intrusive means conceivable" in executing a stop, but he still must be reasonably diligent and must use "the least intrusive means reasonably available." *United States v. Palmer*, 820 F.3d 640, 649 (4th Cir. 2016) (quoting *Digiovanni*, 650 F.3d at 507); *see also Rodriguez*, 135 S. Ct. at 1616.

An officer may engage in certain safety measures during a traffic stop, but generally must focus his attention on the initial basis for the stop. *Palmer*, 820 F.3d at 649. An officer may engage in "ordinary inquiries incident to" the traffic stop, such as inspecting a driver's identification and license to operate a vehicle, verifying the

7

registration of a vehicle and existing insurance coverage, and determining whether the driver is subject to outstanding warrants. *Rodriguez*, 135 S. Ct. at 1615.

While diligently pursuing the purpose of a traffic stop, officers also may engage in other investigative techniques unrelated to the underlying traffic infraction or the safety of the officers. *Id.* at 1614-15 (citing *Arizona v. Johnson*, 555 U.S. 323 (2009) and *Caballes*, 543 U.S. 405). Such unrelated activity is permitted under the Fourth Amendment only as long as that activity does not prolong the roadside detention for the traffic infraction. *Id.* For example, an officer may question the occupants of a car on unrelated topics without impermissibly expanding the scope of a traffic stop. *See Johnson*, 555 U.S. at 333; *Digiovanni*, 650 F.3d at 507. An officer also may engage a K-9 unit to conduct a "dog sniff" around a vehicle during a lawful traffic stop in an attempt to identify potential narcotics. *Caballes*, 543 U.S. at 407-09. However, because such a "sniff" or investigative questioning is intended to detect "ordinary criminal wrongdoing," these actions may not prolong the duration of the traffic stop absent consent of those detained or reasonable suspicion of criminal activity. *See Rodriguez*, 135 S. Ct. at 1615-16 (citation omitted); *see also Caballes*, 543 U.S. at 407-09; *Johnson*, 555 U.S. at 333.

## B.

With these principles in mind, we turn to consider the conduct of Officers Taylor and McClendon in the present case. Initially, we observe that the record does not contain evidence showing that either officer acted in a manner that delayed the completion of the traffic stop. The district court accepted as credible Officer McClendon's testimony that the traffic stop did not take longer than a typical stop would take in these circumstances,

8

as well as Officer Taylor's statement that he did not engage in any action that caused the stop to be extended in duration. Both officers also testified that it typically takes about 10 minutes to write two summonses, and Officer Taylor estimated that in this case it took about eight additional minutes to search the DMV, NCIC, and PISTOL databases. Thus, the officers directly accounted for their activity during about 18 minutes of the stop. And, as noted above, the district court found that the entire stop took about 20 minutes.

Based on the present record, this two-minute time difference, between the estimated time required to complete the officers' described activities and the total length of the stop, does not support an inference that the stop was extended unlawfully for a de minimis amount of time in violation of *Rodriguez*, 135 S. Ct. at 1615-16. The district court found that the duration of the traffic stop was not extended for any purpose beyond the time reasonably required to complete the stop, and Hill has not pointed to any evidence showing that this finding was clearly erroneous. Additionally, the record plainly shows that Officer Taylor had not finished writing the summonses when Officer McClendon yelled "gun." Officers are not required to estimate with "mathematical precision" the duration of each discrete task undertaken during a traffic stop. *See Digiovanni*, 650 F.3d at 511. Moreover, the holding in *Rodriguez* does not render unlawful a traffic stop in which there are brief periods unaccounted for, as long as the stop was not prolonged for purposes beyond the mission of the stop, and the officers executed their tasks with reasonable diligence.

Although defense counsel introduced evidence that Officers Taylor and McClendon had completed other traffic stops that day in a shorter period of time, such a

9

comparison is irrelevant to our analysis. This evidence regarding other stops did not show whether the circumstances were comparable to those presented here, including whether any occupants of other vehicles were deemed "likely armed," whether the officers wrote multiple summonses, or whether they took other action. We therefore conclude that the 20-minute length of the traffic stop did not itself render the stop unreasonable in duration.

We further conclude that none of the officers' individual actions suggested a lack of diligence in pursuing the stop or were otherwise unreasonable. Although Officer Taylor could have executed the stop without using PISTOL, and instead have relied exclusively on the DMV and NCIC databases, his decision to search this additional database did not violate Hill's rights under the Fourth Amendment. As noted above, the Fourth Amendment "does not require that the officer employ the least intrusive means *conceivable*" in effectuating a traffic stop. *Palmer*, 820 F.3d at 649 (emphasis added). In our view, an officer reasonably may search a computer database during a traffic stop to determine an individual's prior contact with local law enforcement, just as an officer may engage in the indisputably proper action of searching computer databases for an individual's outstanding warrants. *See id.* at 651 (explaining that, in the interest of officer safety, officers are "entitled to inquire into a motorist's criminal record after initiating a traffic stop"); *Rodriguez*, 135 S. Ct. at 1615-16; *see also Smith v. Commonwealth*, 683 S.E.2d 316, 318 (Va. Ct. App. 2009) (explaining that PISTOL includes information helpful for officers to assess their safety in the field), *overruled on other grounds by Commonwealth v. Smith*, 709 S.E.2d 139 (Va. 2011). An officer may

10

take such measures with respect to both the driver and passengers of a stopped vehicle to ensure officer safety. *See Maryland v. Wilson*, 519 U.S. 408, 413-15 (1997) (holding that an officer may order a passenger out of a vehicle during a traffic stop for officer safety reasons); *see also United States v. Robinson*, 846 F.3d 694, 699 (4th Cir. 2017) (en banc) ("[W]hen the stop involves one or more passengers, that fact 'increases the possible sources of harm to the officer,' as 'the motivation of a passenger to employ violence is every bit as great as that of the driver.'") (quoting *Wilson*, 519 U.S. at 413-14) (internal alterations omitted).

We also decline Hill's invitation that we find unreasonable as a matter of law Officer McClendon's decision to stand next to the car during most of the stop, rather than to assist Officer Taylor in completing the database searches in the police cruiser. As noted above, the NCIC database returned an alert that the two men were "likely armed." This situation illustrates the concerns that the Supreme Court and this Court repeatedly have emphasized, namely, that because "[t]raffic stops are especially fraught with danger to police officers," those officers may "take certain negligibly burdensome precautions" to ensure the safe completion of the stop. *Rodriguez*, 135 S. Ct. at 1616 (citation and internal quotation marks omitted); *Palmer*, 820 F.3d at 651 (citations and internal quotation marks omitted). Therefore, given the inherent risks involved in such traffic stops, we conclude that the decision here by the two officers to allocate duties at the scene of the traffic stop, so that one remained in the immediate proximity of the vehicle's occupants at all times, was not unreasonable.

11

Officer McClendon's conversation with the driver and Hill similarly did not violate the Fourth Amendment. As set forth above, officers may engage in questioning unrelated to the traffic violations as long as the conversation does not extend the length of the stop. *Rodriguez*, 135 S. Ct. at 1614 (citing *Johnson*, 555 U.S. 323). Given the absence of any contrary evidence, the record before us uniformly shows that Officer McClendon's actions did not cause the stop to be prolonged.

And finally, we conclude that Officer Taylor's decision to request a K-9 unit did not violate the Supreme Court's holding in *Rodriguez*, 135 S. Ct. at 1615-16. The district court made a factual finding that Officer Taylor's decision to place a call requesting the K-9 unit did not extend the time period of the stop, and Hill has not identified any evidence demonstrating that the court's finding was clearly erroneous. To the contrary, the record shows that at the time Officer McClendon shouted "gun," the narcotics-detection dog was still in the K-9 unit's car. Thus, the record before us shows only that the presence of the K-9 unit on the scene was contemporaneous with the officers' diligent pursuit of the mission of the stop.[4] *Compare Rodriguez*, 135 S. Ct. at 1612-13 (traffic stop unlawfully extended when officers conducted "dog sniff" after traffic warning was issued, and dog did not "alert" to narcotics until seven or eight minutes after the purpose of the traffic stop was complete).

---

[4] Additionally, we observe that Officer Taylor requested the K-9 unit only after being notified by NCIC that the driver and Hill were "likely armed" and had been involved in drug trafficking activity.

In sum, the Supreme Court's decision in *Rodriguez* does not require courts to second-guess the logistical choices and actions of a police officer that, individually and collectively, were completed diligently within the confines of a lawful traffic stop. We emphasize, however, that we are not confronted here with an officer's decision to execute a traffic stop in a deliberately slow or inefficient manner, in order to expand a criminal investigation within the temporal confines of the stop without reasonable suspicion of criminal activity or consent of those detained. In such a case, an officer's actions delaying the completion of a stop may compel a different conclusion than the one we reach here. In the present case, however, we hold that because the evidence shows that the officers acted with reasonable diligence in executing the tasks incident to the traffic stop, and the stop was not impermissibly expanded in scope or time beyond the pursuit of the stop's mission, the district court did not err in denying Hill's motion to suppress.

## III.

For these reasons, we affirm the district court's judgment.

*AFFIRMED*

DAVIS, Senior Circuit Judge, dissenting:

Respectfully, I dissent. I would reverse the denial of the motion to suppress.

Appellant Donald Hill was not a motorist. He was a passenger in a vehicle the operation of which violated the rules of the road because: (1) the operator's driver's license had been suspended and (2) the operator appeared to exceed slightly the posted speed limit and was observed to cross the double yellow line dividing the travel lanes of the roadway. Hill had nothing whatsoever to do with these violations. As a passenger in the vehicle who had not committed any violation of Virginia law, Hill had no obligation to identify himself to Officer Taylor (who apparently recognized him in any event) and failed (or declined, as was his right) to identify himself to the officer upon request. Thus, the proper timeline for the sole "mission" of the traffic stop in this case was to identify Jeremy Taylor (the driver) and issue whatever warnings or violation notices that Officer Taylor, in his discretion, chose to issue.

What, then, could possibly justify Hill's prolonged detention? The clear answer to this question is well known to all of us. This was no mere traffic stop. Rather, it was a narcotics and firearms investigation, undertaken in the absence of reasonable suspicion (to say nothing of probable cause) that a narcotics or firearms violation was taking place. Violent drug dealers have the sympathy of none of us; we rightly applaud, respect, and deeply appreciate the brave law enforcement officers who put their lives on the line every day to keep us safe from such violence. But the ill-fated "War on Drugs" has a sometimes overlooked and unmentioned casualty: the Fourth Amendment. Here, the district court's flawed findings easily satisfy the "clearly erroneous" standard because

14

every minute Officer Taylor spent seeking to confirm Hill's identity unreasonably prolonged the traffic stop. *Rodriguez v. United States*, 135 S. Ct. 1609 (2015).