**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4059**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSHUA RAMON BROOKS,

Defendant - Appellant.

**No. 16-4061**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KHADIM MYBOYE TAYLOR,

Defendant - Appellant.

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, District Judge. (3:15-cr-00135-HEH-1; 3:15-cr-00135-HEH-2)

Argued: March 24, 2017                    Decided: April 19, 2017

Before NIEMEYER, MOTZ, and DIAZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Mark Bodner, Fairfax, Virginia; Caroline Swift Platt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellants. Stephen David Schiller, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Robert J. Wagner, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellants. Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After the district court denied their motions to suppress, Joshua Brooks and Khadim Taylor each entered a conditional guilty plea to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On appeal, they again assert that the district court should have suppressed the evidence. We affirm.

I.

On August 4, 2015, a grand jury in the Eastern District of Virginia indicted both Brooks and Taylor for being felons in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Brooks and Taylor each moved to suppress all evidence obtained from them during a traffic stop. After the district court held an evidentiary hearing on the motions to suppress, it denied the motions. We draw the following facts from the evidence offered at that hearing. We view the evidence in the light most favorable to the Government, the party that prevailed below. *United States v. Hill*, 849 F.3d 195, 200 (4th Cir. 2017).

On April 8, 2015, at around 3:00 a.m., two Richmond, Virginia policemen, Officer Craig Johnson and Sergeant Brian Rogers, observed a white Infiniti speeding. Brooks drove the Infiniti, and Taylor sat in the passenger's seat. As the Infiniti turned into the Somerset Glen Apartments complex, Officer Johnson, who was driving the police car, turned on his lights and sirens, signaling Brooks to pull over.

Once Brooks had stopped, Officer Johnson parked the police car behind the Infiniti. He and Sergeant Rogers then exited the police car and walked towards the Infiniti. Officer Johnson went to the driver's side and spoke with Brooks, while Sergeant Rogers went to

3

the passenger's side and addressed Taylor. Officer Johnson told Brooks that he initiated the stop because Brooks was speeding and asked Brooks for his identification. Officer Johnson returned to the police car, ran Brooks's information, and discovered that Brooks's license had been suspended. He then returned to the Infiniti and told Brooks that he would write up a summons for the speeding and for driving without a license.

While Officer Johnson spoke with Brooks, Sergeant Rogers talked with Taylor. Sergeant Rogers observed that Taylor appeared very nervous, that he sat with his left leg elevated above his right leg while he leaned forward, and that instead of looking at Sergeant Rogers, he continued to stare straight ahead. Sergeant Rogers also noticed that Taylor's hands were shaking rapidly, that he was breathing heavily, and that his carotid artery was beating so heavily its pulsating was visible. Sergeant Rogers asked both Brooks and Taylor if there were any weapons in the car. Brooks replied there were not. Sergeant Rogers then specifically asked Taylor if he had any weapons. Taylor turned to look at Brooks, turned back to look straight ahead, and answered that he did not.

By the time Sergeant Rogers had finished speaking with Taylor, Officer Johnson had run Brooks's information and was returning to the Infiniti. Sergeant Rogers intercepted Officer Johnson and told him that he felt he had reasonable suspicion there were weapons in the car. Officer Johnson agreed, and Sergeant Rogers radioed for backup. Meanwhile, Officer Johnson returned again to his vehicle to write Brooks's summonses. About one minute later, Officer Kent Smith arrived on the scene as backup. Officer Johnson had not yet completed writing out the summonses for Brooks's traffic violations.

4

Roughly four to five minutes had elapsed between the initiation of the traffic stop and Officer Smith's arrival.

After Officer Smith arrived, Officer Johnson returned to the Infiniti and instructed Brooks to step out of the car, patted him down, and found no weapons. Officer Johnson then proceeded to the passenger side of the car and asked Taylor to exit, and he hesitantly complied. Officer Johnson instructed Taylor to turn around, face the car, place his hands on his head, and spread his feet apart. As Officer Johnson prepared to perform the frisk, Taylor ran away, and headed towards the back of the apartment complex.

Officer Johnson and Sergeant Rogers pursued Taylor. Officer Johnson saw Taylor reach into his waistband and toss away a dark object with his right hand. Officer Johnson then heard a "metal clanking sound," and surmised that this object was a firearm. Officer Johnson and Sergeant Rogers eventually caught up with Taylor, handcuffed him, frisked him, found no weapons, and placed him under arrest. They retraced the path of Taylor's flight and found a firearm near where Taylor threw the object. Taylor denied that the firearm was his.

Officer Johnson next searched the Infiniti. He noticed a bulge in the floor mat by the driver's seat, lifted the mat up, and found another firearm. After Officer Johnson found the firearm under the floor mat, he placed Brooks under arrest.

Brooks and Taylor subsequently entered conditional pleas on the felon in possession counts, which preserved their rights to appeal the denial of the suppression motions. The district court sentenced Brooks to sixty months in prison, three years of supervised release,

5

and a $100.00 assessment. Taylor received a sentence of 108 month in prison, three years of supervised release, and a $100.00 assessment. Both defendants noted timely appeals.

## II.

On appeal from the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Hill*, No. 15-4639, 2017 WL 1192897, at *3 (4th Cir. March 30, 2017). The Fourth Amendment to the Constitution protects people against "unreasonable searches and seizures." U.S. Const. amend. IV. Neither Brooks nor Taylor contends that the policemen's decision to stop the Infiniti was improper. *See Hill*, 2017 WL 1192897, at *3 ("A traffic stop constitutes a 'seizure' under the Fourth Amendment and is subject to review for reasonableness."). Rather each challenges two separate investigative actions that Officer Johnson took during the traffic stop.

Taylor asserts that Officer Johnson lacked an adequate basis to justify the frisk. Brooks argues that Officer Johnson did not have sufficient grounds to search the Infiniti after Taylor's arrest. We address each argument in turn.

## A.

The Supreme Court has held that after lawfully stopping a vehicle, police officers may frisk any occupant of the car if there is "reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). Such a frisk does not require "cause to believe any occupant of the vehicle is involved in a criminal activity." *Id.*

"Reasonable suspicion is a 'commonsense, nontechnical' standard that relies on the judgment of experienced law enforcement officers, 'not legal technicians.'" *United States v. Williams*, 808 F.3d 238, 246 (4th Cir. 2015) (quoting *Ornelas v. United States*, 517 U.S. 690, 695 (1996)). We "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "In order to demonstrate reasonable suspicion, a police officer must offer 'specific and articulable facts' that demonstrate at least 'a minimum level of objective justification' for the belief that criminal activity is afoot." *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

When he ordered Taylor to exit the car, Officer Johnson knew that Taylor had exhibited suspicious behavior. Taylor seemed extremely nervous, with shaky hands, heavy breathing, and a pulsating carotid artery. *See United States v. Branch*, 537 F.3d 328, 338 (4th Cir. 2008); *United States v. Foreman*, 369 F.3d 776, 784-85 (4th Cir. 2004). Additionally, Officer Johnson knew from Sergeant Rogers that Taylor had sat in a bizarre leaning position, which suggested that he was hiding something, and that Taylor had failed to make any eye contact when questioned by Sergeant Rogers. Further, Officer Johnson knew that Taylor had not answered Sergeant Rogers's question about whether he was armed until he looked at Brooks. Moreover, the time of the traffic stop and the fact that

7

the Infiniti carried multiple occupants bolstered an objective risk of danger. *See United States v. George*, 732 F.3d 296, 300 (4th Cir. 2013).[1]

In arguing to the contrary, Taylor heavily relies on *United States v. Massenburg*, 654 F.3d 480 (4th Cir. 2011), in which we reversed the denial of a suppression motion. There, police officers received an anonymous tip that someone had fired gun shots at a particular block in a high crime neighborhood. *Id.* at 482. Four blocks from the purported location of the shooting, the officers saw four young men and asked to pat them down. Some consented, but Massenburg did not. *Id.* Nevertheless, the officers searched him, and found contraband. *Id.* To demonstrate reasonable suspicion, they relied only on Massenburg's nervousness, the tip, and that the encounter took place in a high crime neighborhood. *Id.* at 489. We noted that Massenburg's manifestations of nervousness — namely his refusal to consent to a pat down, the relatively short distance he kept from the three other members of his group, and his failure to make eye contact with the police officers — were "slight." *Id.*

The facts of this case differ markedly from those in *Massenburg*. Taylor's heavy breathing, shaking hands, and pulsating carotid artery — all of which went well beyond

---

[1] In reaching this conclusion, we reject the argument, which both Brooks and Taylor raise, that the policemen improperly prolonged their detention. *See Williams*, 808 F.3d at 245-46 (explaining that, "to extend the detention of a motorist beyond the time necessary to accomplish a traffic stop's purpose, the authorities must either possess 'reasonable suspicion or receive the driver's consent.'") (quoting *United States v. Digiovanni*, 650 F.3d 498, 507 (4th Cir. 2011)). Officer Johnson had acquired reasonable suspicion that Taylor was dangerous at the time Sergeant Rogers informed him of Taylor's odd behavior. That conversation between the two policemen took place no more than four minutes into the traffic stop, and there is no suggestion that the policemen should have reasonably completed the traffic stop in that short time interval.

Massenburg's behavior — constitute the type of behavior that we have held can trigger reasonable suspicion. *See Branch*, 537 F.3d at 338; *Foreman*, 369 F.3d at 784-85. Additionally, Taylor's odd leaning position and refusal to answer Sergeant Roger's question about weapons until after he looked at Brooks — factors entirely separate from any manifestation of nervousness coming from Taylor — further bolsters the reasonable suspicion calculus. With these factual distinctions, we have no problem finding *Massenburg* distinguishable. Officer Johnson had reasonable suspicion to initiate the frisk in response to Taylor's behavior in the car.[2]

B.

We turn next to Brooks, and his contention that Officer Johnson's search of the interior of the Infiniti — which took place after the policemen had arrested Taylor, and during which Officer Johnson found Brooks's gun — was improper.

In *Arizona v. Gant*, 556 U.S. 332 (2009), the Supreme Court held that police may carry out a warrantless search of a vehicle after the arrest of a recent occupant in certain instances. One of these instances is where "it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* Officer Johnson's search of the Infiniti fell within this category.

Although Brooks's traffic violations would not in themselves support a search within the Infiniti, the arrest of Taylor, his passenger, for being a felon in possession of a

---

[2] At oral argument, Taylor's counsel posited that Officer Johnson needed to have developed reasonable suspicion at the time he ordered Taylor to face the car and place his hands on his head. As explained above, by that point Officer Johnson had already acquired the requisite reasonable suspicion.

9

firearm certainly did. The search of the Infiniti might have revealed, for example, ammunition for the weapon that Officer Johnson and Sergeant Rogers found, a box or holster in which Taylor might have carried that weapon, or receipts showing the purchase of that particular gun. *See United States v. Johnson*, 627 F.3d 578, 584 (6th Cir. 2010) ("Police could have reasonably believed that ammunition or additional firearms were in the car or in containers in the car, especially in the passenger area searched by police that was formerly occupied by [the defendant]."). Given the reasonable belief that he might find evidence of Taylor's crime of being a felon in possession of a firearm inside the Infiniti, Officer Johnson did not act unlawfully when he searched it, and subsequently found Brooks's firearm.

III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.