PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4216

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ZACKARY ROBERT LULL,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:14-cr-00106-BO-1)

Argued: March 24, 2016                    Decided: May 25, 2016

Before DUNCAN and THACKER, Circuit Judges, and DAVIS, Senior Circuit Judge.

Reversed, vacated, and remanded by published opinion. Judge Duncan wrote the opinion, in which Judge Thacker joined. Senior Judge Davis wrote an opinion concurring in part and dissenting in part.

**ARGUED**: Joseph Edward Zeszotarski, Jr., GAMMON, HOWARD & ZESZOTARSKI, PLLC, Raleigh, North Carolina, for Appellant. Patrick Benton Weede, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF**: Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

DUNCAN, Circuit Judge:

Zackary Robert Lull ("Lull") entered a conditional plea of guilty to one count of possession of a firearm in furtherance of a drug crime in violation of 18 U.S.C. § 924(c), in which he expressly retained the right to appeal the district court's denial of his motion to suppress evidence obtained from a search of his residence. Because the search warrant application omitted material information about the reliability of the confidential informant who was the primary source of the information used to establish probable cause, we reverse the district court's denial of Lull's motion to suppress, vacate his conviction and sentence, and remand for further proceedings.

I.

In May 2014, one of the Wake Forest Police Department's confidential informants ("the informant") asserted that he was able to buy illegal drugs from Lull in Lull's home, located in Rolesville, North Carolina. The Wake Forest Police Department gave this information to the Wake County Sheriff's Office, within whose jurisdiction Lull's residence fell. The informant had never worked with the Sheriff's Office before.

In following up, Investigator E. A. Welch of the Sheriff's Office met with the informant. The informant said that he knew Lull from high school and had previously purchased cocaine,

2

marijuana, and other illegal substances from Lull. Investigator Welch arranged for the informant to purchase an "8-ball," or 3.5 grams of cocaine, from Lull during a controlled buy. The informant was to be paid for his assistance.

The Sheriff's Office corroborated some of the informant's information prior to conducting the controlled buy. For example, it confirmed that a woman whose last name was Lull-- believed to be Lull's mother--owned the residence at the address the informant provided. Several days later, the informant made a recorded phone call to Lull in the presence of Investigator Welch and other officers. During this call, the informant spoke with a man who identified himself as "Zack," who agreed to sell the informant 3.5 grams of cocaine for $180 at Lull's home later that day.

Before initiating the controlled buy, officers searched the informant and found no contraband on his person. An undercover officer then drove the informant to Lull's residence. Although the agreed-upon purchase price for the 3.5 grams of cocaine was $180, the officer gave the informant $240 because the informant indicated that he might be able to purchase other illegal drugs from Lull. The officer also gave the informant a telephone that doubled as a recording device and would enable law enforcement officers to listen to the informant's interactions during the controlled buy.

3

During the buy, Investigator Welch and his team were positioned around the corner from Lull's residence, and the undercover officer was parked outside. Just after 6:00 p.m., the informant entered the home, and the officers listened to the informant's interactions through the telephone recording device. The officers heard the informant engage in a conversation with another individual, from whom the informant purchased cocaine. Investigator Welch testified at the suppression hearing that he could recognize the voice of the other individual as Lull "based on [his] knowledge of [Lull]." J.A. 84.[1]

After being inside for approximately five minutes, the informant left the residence. As the informant was exiting, the undercover officer observed him behave "almost as if he was trying to conceal something in his pockets, underwear." J.A. 85. The informant entered the undercover officer's car and was driven to the Police Department and searched. At the Police Department, the informant surrendered four grams of cocaine and identified Zack Lull as the seller. He also returned $40 of the remaining buy money, when he should have returned $60.

Officers questioned the informant about the remaining $20. The informant first responded that he did not know what the

---

[1] But see J.A. 103 (responding "[y]es, sir," after being asked on cross-examination "[y]ou said you couldn't determine if that was the defendant's voice on the tape, correct?").

4

officers were talking about, but eventually said that he thought he gave the money to Lull. Investigator Welch and another detective from the Sheriff's Office then strip-searched the informant, and "$20 dropped out of his underpants." J.A. 86. The Drugs and Vice Unit of the Sheriff's Office immediately determined that the informant was not reliable and terminated him as a confidential informant. In Investigator Welch's words, they "didn't think it would be an ethical thing to do, to use someone as a confidential informant knowing full well [he] had stolen from" the Sheriff's Office. J.A. 100. At approximately 8:30 p.m., the officers arrested the informant on a felony charge of obtaining property under false pretenses.

Following this incident, Investigator Welch "immediately" began working on an affidavit in support of an application for a warrant to search Lull's residence. J.A. 88. The search warrant was issued at approximately 9:00 p.m. that evening, just half an hour after the officers had arrested the informant. Investigator Welch, however, failed to disclose the informant's theft and subsequent arrest to the state court magistrate.

Investigator Welch's affidavit was the only information presented to the magistrate in support of the warrant application. In relevant part, the affidavit read as follows:

> 2. Within the past 72 hours, Information was received from a confidential source whereby a young white 18 year old male residing at the address identified as

5

> Zach Lull, was selling quantities of Cocaine,
> Marijuana and other illegal drugs from his home
> address . . . for money to members of the community.
> The information supplied to this affiant by CI# 14-12,
> had stated he had recently bought illegal drugs from
> this male identified as Zach Lull.
>
> 3. A check of the residence in Law Enforcement records
> as well as physically going to the venue shows there
> to exist such a location and the property owned by a
> female with the last name "Lull" being the registered
> home owner.

J.A. 39. The affidavit also recounted the controlled buy and concluded with Investigator Welch's statement that, based on his training and experience, he would expect to find a number of items in Lull's home relating to drug trafficking. This was because "drug traffickers very often keep the aforementioned items readily accessible such as in their residences and businesses." J.A. 41.

The affidavit did not, however, include information about the phone call between the informant and the seller, in which the seller identified himself as "Zack." Further, when recounting what the officers overheard when the informant was inside the residence, the affidavit stated only that "through Investigative means, a conversation was heard between two males." J.A. 40. Investigator Welch did not assert in the affidavit, as he asserted at the suppression hearing, that he was able to independently identify Lull as the speaker through his knowledge of Lull's voice. Finally, the affidavit contained

no statement concerning the informant's reliability or previous experience working as a confidential informant for the Wake Forest Police Department.

Officers executed the warrant at 10:35 p.m. that night. When the officers searched Lull's home, there were five individuals inside, including Lull. Officers seized cocaine, marijuana, firearms, body armor, and around $3,600 in U.S. currency during their search. All five individuals were arrested and charged with state drug charges in connection with the contraband found at the residence.

## II.

On June 4, 2014, a grand jury in the Eastern District of North Carolina indicted Lull on one count of possession with intent to distribute a quantity of cocaine and marijuana in violation of 21 U.S.C. § 841(a)(1) ("Count One"), and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) ("Count Two"). Before entering a plea, Lull moved to suppress all evidence obtained from the search of his residence, arguing that officers obtained the search warrant in violation of Franks v. Delaware, 438 U.S. 154 (1978).

In Franks, the Supreme Court developed a two-prong test clarifying what a criminal defendant must show when challenging

the veracity of statements made in an affidavit supporting a search warrant. If both prongs are met, the search warrant must be voided and the fruits of the search excluded. Franks, 438 U.S. at 155-56. Under the first prong--the "intentionality" prong--the defendant must show that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Id. Under the second prong--the "materiality" prong--the defendant must show that "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." Id. at 156. Both prongs must be proven by a preponderance of the evidence. Id.

We have since held that the two-pronged Franks test applies not only to cases in which an agent includes affirmatively false statements in a warrant affidavit, but also when an agent omits relevant facts from the affidavit. United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990). This provides the basis for Lull's claims here: Lull contends that in the affidavit submitted to obtain probable cause, Investigator Welch intentionally and/or recklessly omitted information that was material to the determination of probable cause.

The district court held a Franks hearing on November 20, 2014, and heard testimony from Investigator Welch and Sergeant Richard Spivey, who had been the on-scene supervisor of the

8

controlled buy.  On November 23, 2014, the district court issued an order denying Lull's motion to suppress.  The court concluded that Investigator Welch's conduct "did not rise to the level of intentionally misleading or recklessly disregarding whether the omission made the affidavit misleading."  United States v. Lull, No. 5:14-CR-106-BO, 2014 WL 6666811, at *2 (E.D.N.C. Nov. 24, 2014).  Because Investigator Welch did not possess the requisite intent, the court reasoned, there was no Franks violation and no reason to suppress the evidence.

Furthermore, the district court concluded that even if Investigator Welch had possessed the requisite intent, the omission would not have satisfied the Franks "materiality" prong because including details about the informant's theft, arrest, and discharge from service would not have defeated probable cause.  The court reasoned that,

> [r]egardless of with whom the informant spoke in the house, from whom he obtained the cocaine, and what he subsequently did with the buy money, there was clearly a fair probability that contraband would be found within the . . . house based on the undisputed fact that the informant obtained cocaine therein.

Id. at *3.  According to the district court, the informant's tip was "corroborated by the fact that he did, in fact, obtain contraband in the location identified in the search warrant."  Id.  Thus, having found that Lull failed to satisfy either prong

9

of the Franks test, the district court denied Lull's motion to suppress.

In light of this ruling, Lull entered a conditional plea of guilty to Count Two, possession of a firearm in furtherance of a drug trafficking crime, reserving the right to appeal the district court's order denying his suppression motion. He was sentenced to the statutory minimum of 60 months' imprisonment on Count Two, and the charges in Count One were dismissed. Lull timely appealed.

III.

When reviewing a district court's ruling on a motion to suppress, "we review factual findings for clear error and legal determinations de novo." United States v. Lewis, 606 F.3d 193, 197 (4th Cir. 2010) (citation omitted). In doing so, "we must construe the evidence in the light most favorable to the prevailing party and give due weight to inferences drawn from those facts by resident judges and law enforcement officers." Id. (citation and internal quotation marks omitted). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (second and third alterations in original) (citation and internal quotation marks omitted).

10

IV.

Lull's argument on appeal focuses on the affidavit that Investigator Welch submitted in support of the warrant application. Lull contends that Investigator Welch intentionally or recklessly omitted material facts from the affidavit and that, had those facts been included, the affidavit would not have supported probable cause. Based on this omission, Lull argues that, under Franks and its progeny, the search of his home violated his Fourth Amendment rights.

Under the Fourth Amendment, which applies to the states through the Fourteenth Amendment, see Mapp v. Ohio, 367 U.S. 643, 655 (1961), "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. As mentioned above, in Franks, the Supreme Court addressed the question of whether a criminal defendant has the right to challenge the veracity of statements made in an affidavit supporting an application for a search warrant. The Court held that the defendant must first "make[] a substantial preliminary showing" of the intentionality and materiality prongs; if the defendant does so, "the Fourth Amendment requires that a hearing be held at the defendant's request." Franks, 438 U.S. at 155-56. If the defendant is able to satisfy both prongs by a preponderance of the evidence at this hearing, the search warrant is voided. Id. at 156. In the context of an

11

omission, we have found a Fourth Amendment violation only where "affiants omit[ted] material facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading."  Colkley, 899 F.2d at 300 (citation and internal quotation marks omitted).

Below, we consider whether Lull has satisfied this test, thus warranting suppression.  This involves two separate inquiries, even though they turn on overlapping facts.  We first consider whether the affiant omitted the information either intentionally or with reckless disregard of whether it would make the affidavit misleading.  Concluding that Investigator Welch was at least reckless in his omission, we turn to the "materiality" prong of the Franks test.  Because we conclude that this omission was indeed material, we hold that the district court erred in denying Lull's motion to suppress.

A.

To establish the "intentionality" prong under Franks, Lull must show by a preponderance of the evidence that Investigator Welch omitted information with the intent to mislead the magistrate or that he omitted the information with reckless disregard of whether it would make the affidavit misleading. Understandably, the defendant's burden in showing intent is greater in the case of an omission because "[a]n affiant cannot be expected to include in an affidavit every piece of

12

information gathered in the course of an investigation." Id. A showing that the officer acted negligently, or that the omission was merely an innocent mistake, is insufficient to warrant suppression. Miller v. Prince George's Cty., 475 F.3d 621, 627-28 (4th Cir. 2007) (citing Franks, 438 U.S. at 171).

1.

In considering the intentionality prong, the district court noted that "Investigator Welch testified that he deliberately chose not to include the information at issue because, given that the controlled buy was completed prior to the theft, he believed the theft had no bearing on the purchase of narcotics from defendant's house." Lull, 2014 WL 6666811, at *2. Given this, the court concluded that Investigator Welch's "testimony and the evidence presented do not suggest that he either intended to mislead the magistrate or acted recklessly in omitting the theft." Id. At the "very worst," Investigator Welch had acted negligently. Id. (quoting Colkley, 899 F.2d at 301).

We cannot agree with the district court. Contrary to Investigator Welch's contention, the informant's theft was not "separate" from the controlled buy. The informant demonstrated that he was unreliable during the course of this very transaction. Given this, how the informant's "behavior and his conduct in stealing that money" could have "absolutely nothing

13

to do with that controlled purchase," as Investigator Welch contends, eludes us. See J.A. 94.

Although Investigator Welch asserts that the informant was reliable for the purposes of the controlled buy, he also testified that the informant was "absolutely" determined to be unreliable after the informant stole. J.A. 98-99. However, deeming the informant reliable for some purposes but unreliable for others is an assessment that is for the magistrate, not Investigator Welch, to make. See Franks, 438 U.S. at 165 ("It is established law that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter.") (citations omitted). As an experienced investigator, Investigator Welch would surely know that reliability is "key" to a magistrate's probable cause analysis when the search warrant application contains information provided by an informant. See United States v. Wilhelm, 80 F.3d 116, 119 (4th Cir. 1996).

We acknowledge that Investigator Welch dealt directly with the informant, knew of, although not directly about, the informant's previous experience working as a confidential informant for the Wake Forest Police Department, and listened in on the conversation during the controlled buy. However, the magistrate can only make a probable cause determination based on

14

the information that was actually provided to him, and Investigator Welch failed to include any details, impressions, or limitations related to these events in his affidavit.

For these reasons, we find the district court's reasoning as to Investigator Welch's intentionality unpersuasive.

2.

In reaching our conclusion that Investigator Welch omitted this information at least recklessly, we find several facts to be significant. These include: (1) the decisiveness with which the Sheriff's Office acted in discharging and arresting the informant; (2) Investigator Welch's knowledge of the consequences of the informant's crime; (3) the temporal proximity of the arrest to the decision to omit information from the affidavit; and (4) the obvious impact of the informant's misconduct on any assessment of his reliability. Together, these factors are dispositive under the circumstances of this case and show that Investigator Welch acted at least recklessly.

First, to the rest of the Sheriff's Office, the egregious nature of the informant's actions was clear. This was demonstrated by the informant's immediate arrest on felony charges and discharge from service. Second, as discussed above, Investigator Welch knew at the time he filled out the affidavit that the informant had been discharged because he had been deemed unreliable. Despite this knowledge, Investigator Welch

15

decided for himself that the informant was reliable for the purposes of the controlled buy, usurping the magistrate's role. Third, little time passed between the arrest and Investigator Welch's decision to omit this information from the affidavit. These events transpired just minutes before Investigator Welch drafted the warrant application, and they were undoubtedly fresh in his mind.

Finally, the omitted information was clearly relevant to the magistrate's probable cause determination. One way of establishing reckless disregard is by proffering "evidence that a police officer 'failed to inform the judicial officer of facts [he] knew would negate probable cause.'" Miller, 475 F.3d at 627 (alteration in original) (citations omitted); see also United States v. Jacobs, 986 F.2d 1231, 1234-35 (8th Cir. 1993) ("[T]he omission occurred at least with reckless disregard of its effect upon the affidavit. . . . Any reasonable person would have known that this was the kind of thing the judge would wish to know."). The relevance of the omission thus comes into play: the significance--or insignificance--of a particular omission to the determination of probable cause may inform our conclusion regarding the agent's intent.[2] The trustworthiness of the

---

[2] This court has previously noted in dicta that it has "doubts about the validity of inferring bad motive under Franks from the fact of omission alone, for such an inference collapses
(Continued)

16

confidential informant lies at the heart of the reliability determination, and so the relevance of this information should have been obvious to Investigator Welch.  This is especially so because the affidavit contained no other statement concerning the informant's credibility or experience working as a confidential informant.

Given the unique set of circumstances surrounding Investigator Welch's decision to omit this information, we cannot conclude that Investigator Welch's omission was an act of mere negligence or an innocent mistake.  At the very least, Lull has shown by a preponderance of the evidence that Investigator Welch omitted the information with reckless disregard of whether it would make the affidavit misleading to the magistrate.  Thus, we conclude that Lull has satisfied the intentionality prong of the Franks test.

---

into a single inquiry the two elements--'intentionality' and 'materiality'--which Franks states are independently necessary." Colkley, 899 F.2d at 301.  We are mindful in this case to treat each prong as a distinct inquiry, and we do not base our conclusion on "the fact of omission alone."  Rather, we consider this fact along with the broader circumstances in which the affidavit was drafted.

B.

We next consider whether the omitted information is "material" under Franks: that is, whether it was "necessary to the finding of probable cause." See Colkley, 899 F.2d at 301 (quoting Franks, 438 U.S. at 156). In Lull's view, "the credibility of the informant was paramount to the probable cause analysis," given that the only evidence identifying Lull as the seller of the drugs in the affidavit came from an informant who had been deemed unreliable. See Appellant's Br. at 21.

We assess whether Lull has established the materiality prong by considering the "totality of the circumstances," evaluating the affidavit as a whole and all circumstances set forth within. Colkley, 899 F.2d at 301-02; see Gates, 462 U.S. at 233. We first consider the effect that the omitted information had on the reliability of the informant's information, and determine that the informant's demonstrated unreliability undermined his credibility and the veracity of his statements presented in the warrant application. Because the magistrate did not have the benefit of the omitted information concerning the informant's reliability, the informant's statements were not properly considered as a basis for probable cause. When these statements are excluded, we conclude that there remains insufficient information from which to find

18

probable cause.  Therefore, we conclude that the omitted information is indeed "material" under Franks.

1.

Much of the information included in Investigator Welch's affidavit came solely from the informant.  When the information forming the basis for probable cause comes from an informant, the informant's "veracity" and "reliability" are critical to the totality of the circumstances test.  Wilhelm, 80 F.3d at 119 (quoting Gates, 462 U.S. at 233).  While these are not the only factors to be considered, we have held that "a judicial officer's assessment of probable cause . . . must include a review of the 'veracity' and 'basis of knowledge' of persons supplying hearsay information."  United States v. Perez, 393 F.3d 457, 461-62 (4th Cir. 2004) (emphasis added) (citations and internal quotation marks omitted).

In this case, that the omitted information seriously calls into question the informant's reliability is without doubt: the Sheriff's Office essentially admitted as much when, upon discovering the theft, it immediately discharged the informant. Further, as noted above, when Investigator Welch was asked at the suppression hearing why the Sheriff's Office made this decision, he responded that continuing to work with the informant after the informant had lied to and stolen from the Sheriff's Office would not be ethical.  Critically, the

19

affidavit contained no other information relating to the informant's reliability and failed to mention his experience working as a confidential informant for the Wake Forest Police Department.

Investigator Welch's omissions therefore prevented a neutral magistrate from being able to accurately assess the reliability and the veracity, and thus the significance, of the informant's statements. See United States v. Glover, 755 F.3d 811, 814 (7th Cir. 2014) (concluding that an affidavit that "omitted all information regarding the informant's credibility . . . undermined the issuing magistrate's ability to perform his role as a neutral arbiter of probable cause"). Because of this, we cannot now rely on these statements in assessing whether probable cause existed. See United States v. Hall, 113 F.3d 157, 158 (9th Cir. 1997) (holding that a search warrant based solely upon an informant's claims lacked probable cause where the affidavit omitted "absolutely critical" information calling into question the informant's credibility). We therefore set aside the information provided exclusively by the informant and next consider whether the remaining information supports a finding of probable cause.

When the information provided by the informant is removed from the affidavit, little remains. We are left only with: (1) the identification of the residence as belonging to a woman with the last name "Lull"; (2) the fact of the controlled buy, that is, that the informant went into the Lull residence without cocaine and emerged five minutes later with cocaine; and (3) that "through Investigative means, a conversation was heard between two [unidentified] males" during the controlled buy. J.A. 40. No information remaining in the affidavit identifies Lull specifically as the seller or otherwise connects him to the drug transaction.[3]

The district court held that "there was clearly a fair probability that contraband would be found within the . . . house based on the undisputed fact that the informant obtained cocaine therein." Lull, 2014 WL 6666811, at *3. We disagree. While the occurrence of the controlled buy is certainly relevant

---

[3] In evaluating whether probable cause would have existed if the omitted statements had been included, we only consider "the information actually presented to the magistrate during the warrant application process." Owens ex rel. Owens v. Lott, 372 F.3d 267, 277 (4th Cir. 2004) (citation omitted). We therefore do not consider any additional facts that Investigator Welch testified to during the suppression hearing, including that Investigator Welch recognized the voice of the other individual heard speaking during the controlled buy as Lull, because this information was not presented to the magistrate.

to the probable cause determination, this is just one fact to be considered against the totality of the circumstances.  See United States v. Khounsavanh, 113 F.3d 279, 285 (1st Cir. 1997) ("Because of the importance of Fourth Amendment freedoms to every American, and because of the fact[-]specific nature of the probable cause inquiry, we reject the government's contention that a controlled buy should be per se sufficient to establish probable cause.") (citation omitted).  In the circumstances of this case, this evidence, by itself, is insufficient to establish probable cause.

Our circuit has long followed the rule that "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993) (quoting United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988)).  In previous drug trafficking cases, we have found the nexus requirement satisfied when there was evidence that the suspect was involved in the crime, coupled with "the reasonable suspicion . . . that drug traffickers store drug-related evidence in their homes."  United States v. Williams, 548 F.3d 311, 319 (4th Cir. 2008) (collecting cases).  As mentioned above, this "reasonable suspicion" is exactly that which Investigator Welch relied upon in his affidavit: that "drug

22

traffickers very often keep the aforementioned items readily accessible such as in their residences and businesses." J.A. 41.

But this inference is contingent on the connection between the drug trafficker and his or her residence. From the remaining information in the affidavit, essentially all we know is that cocaine was purchased from a man in a residence that may have belonged to Lull's mother. We do not have reliable information about who this man was, whether he resided there, or if he was alone in the residence. Although the investigators personally witnessed the informant go in with money and come out with drugs, they relied on the informant's word alone that the seller was Lull. This lack of information about the identity of the seller creates an obvious problem: if a non-resident had been the individual who had sold drugs to the informant--if Lull was not the drug trafficker--there would be no reason to believe that, hours later, there would be drug contraband or financial records of drug transactions in Lull's residence. See United States v. Suarez, 906 F.2d 977, 984 (4th Cir. 1990) ("Probable cause to search exists when . . . the totality of the circumstances[] are sufficient to lead a prudent person to believe that the items sought . . . will be present at the time and place of the search.") (emphasis added) (citation omitted).

As the Supreme Court has repeatedly emphasized, the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585 (1980) (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972)). Because of this, when reviewing cases such as the one before us, we must satisfy ourselves that "the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed." Gates, 462 U.S. at 238-39 (alterations in original) (citation and internal quotation marks omitted). In this case, given the unusual degree of reliance on the informant and the near-total lack of corroborating evidence, this standard has not been met. Cf. Glover, 755 F.3d at 818 ("[O]mission of an informant's criminal background and financial motive is not necessarily essential to the probable cause determination . . . in the context of a detailed affidavit that had been extensively corroborated.") (citation and internal quotation marks omitted). The connection between Lull and the drugs is too tenuous to support a finding of probable cause to search his residence.

3.

In light of the above, the omitted information bearing on the credibility of the informant was material to the magistrate's finding of probable cause, and we conclude that

24

Lull has established the materiality prong of the Franks test by a preponderance of the evidence.

V.

Because Lull has shown by a preponderance of the evidence that Investigator Welch omitted information from the search warrant affidavit with at least a reckless disregard for whether these omissions made the application misleading, and because these omissions were material to a finding of probable cause, Lull has established a violation of his Fourth Amendment rights under Franks v. Delaware. Therefore, the district court erred in denying Lull's suppression motion. The ruling of the district court is accordingly reversed, Lull's conviction and sentence vacated, and the case remanded for further proceedings consistent with this opinion.

REVERSED, VACATED, AND REMANDED

DAVIS, Senior Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion's holding that the district court clearly erred in finding that Investigator Welch did not intentionally or recklessly omit from the warrant affidavit the circumstances surrounding the informant's attempt to steal twenty dollars from the funds provided by the Sheriff's Office to make the controlled buy. For the reasons stated by the district court, however, I cannot join in holding that the omitted information was "material" and therefore that its absence defeated probable cause to search the Lull residence.

Magistrates and judges, state and federal, know from experience and common sense that drug abusers who cooperate with law enforcement officers are notoriously unreliable human beings, burdened as they typically are with barely manageable affronts to their inherent human dignity, including but not limited to addictions, debts incurred to service those addictions, and criminal convictions, all coupled with dissolved and dissolving family and personal relationships. Investigator Welch should have disclosed the informant's post-controlled-buy arrest and the reasons for it; as the majority opinion cogently explains, his excuse for not doing so cannot be credited. But even if he had made the disclosure, no judge with experience issuing warrants would have refused to issue the search warrant

26

in this case.  Cf. United States v. Allen, 960 F.2d 1055, 1057 (D.C. Cir. 1992) (holding that an informant's controlled buy of crack cocaine constituted probable cause for issuance of a search warrant), cited with approval in United States v. Clyburn, 24 F.3d 613, 618 (4th Cir. 1994).

Respectfully, I dissent, in part.